May it please the Court. My name is Dessa Reimer. I represent Westmoreland and the union in this appeal. I'm going to attempt to save five minutes for rebuttal, and I'll watch the clock. There are three issues before the Court in this case. The first is whether a issue is appellate jurisdiction. Can you turn to that first, please? Yes, absolutely. I'm having real trouble with your theory of appellate jurisdiction. Otherwise, we're not here. We go home. Absolutely. It's the first question that this Court has to answer and satisfy itself that it has jurisdiction. On the final question, we're asserting jurisdiction under 28 U.S.C. 1291, and we're certainly aware of the ALSEA rule and the administrative remand rule where the substantive issues have been remanded to the district court. It's our position here, however, that when you apply the three-factor consideration for exception to the ALSEA rule that both of the issues on appeal are final for purposes of this Court's jurisdiction. The most important thing to remember is that those are considerations rather than strict factors, as the Ninth Circuit said in Sierra Club, Sierra Forest legacy. So they have to be applied in a practical way. Looking at those three factors, the first factor is whether the district court conclusively resolved a separable legal issue. Both standing and the standard of review are separate legal issues that were before the district court and will not be addressed by the OSM on remand. Agreed, at least by me. Okay. The second issue is whether the remand forces a potentially erroneous rule to be applied in wasted proceedings below. If we win on the standing issue, then the entire EIS process on remand is a wasted proceeding. Similarly, if the standard of review was applied incorrectly, there's a number of substantive issues that would have narrowed the focus. There's no doubt that it would be wasting time if this was all erroneous. Right. But that's one of the problems. Inefficiency is a lot of times we have rulings by district courts that are just errors. Nevertheless, we say notwithstanding that they're wrong, we have to we wait for matters of judicial and appellate efficiency to have everything bound up at once. So if you could turn the third prong. Yes. Which is the most important prong, Your Honor, I would say. And that's that appeal would otherwise be foreclosed on these two issues if it's not heard by the district court. What relief is it? Is it that or is it can you can you get on remand all the relief that you're seeking here? If not on these these particular issues, but the what you want to do is continue your expansion of the mine. Right. And by the way, as I understand it from the record, that that expansion has been approved and the district court didn't vacate it. So that is and we have a testimony in one of the affidavits that it that in fact it's already started. So you all are actually has started this expansion in this in this area, correct? Yes. The mine expansion has begun. I would say taking your second point first in terms of the vacature and whether the district court included that as part of its remand. That's irrelevant for purposes. I know that. I know. I just I just understand the context here. But so you've already started. I'm getting to the question of relief. So the question is, the relief that you want is you just don't want your operation to be brought to a halt. Right. And so it's possible that on remand that they'll do a new environmental impact statement and they'll come around and the Office of Service Mining will say, there's no problem here. You guys can keep doing what you're doing. That can happen. Am I am I not correct about that? That is certainly a possibility. And the other outcome is also possible that the administration could decide not to approve the mine plan. Of course. And it's the threat of that remedy. Let's say they approve it. You just keep on moving because you already are moving. You're done. You haven't been halted, right? We haven't been halted. But I I would posit for the court that the this factor, the policy behind this factor is whether the issue is going to avoid review. And in this case, we don't need to have review. We're trying to get it's not some amorphous issue. We're going down one road. That is, you're already working in line and then it goes back for remand and they decide there's not a problem. What needs to be reviewed at that point? Exactly. Your Honor, there let's just take that. Why do we need to review standing? We don't doesn't matter. The fact that they didn't have standing or didn't have standing out of the case, it's it's it's it's become smooth. There are a lot of issues in district court litigation that become that maybe district gets it wrong, but ultimately you win in the end. And so there's delay, which I acknowledge. But even here, you're not even delayed because you're doing you're already expanding into the area. So how can you not? So I would I would argue that the the the policy and in the collateral order doctrine, we lost on the standing issue and the motion to dismiss. We didn't have an opportunity at that stage to raise the issue because all issues for appeal. So all of those issues have to be raised at the end of the district court proceedings. At this point, they are final. They've been decided by the district court. And you know, I haven't answered my question. I want you to go down two paths. Path number one, mine continues as it is today. It goes back on remand. They say, what's the beef here? No problem. End of story as far as your client is concerned, right? Well, we will still have had to go through that waste. Well, I mean, the answer is straight. Of course, that might have to happen. It's the price of doing business. On the other hand, you go back, it gets remanded and they say, you know what? There are some procedural or other errors here. So we need to have a revision, a reissuance, whatever. And it turns out you don't like those conditions or you're in a disagreement with those, then you would appeal, right? It would obviously depend on what the outcome was below. You have a possibility. And so what does it matter about the standing issue at that point? Because it's not unreviewable. I mean, we don't usually take standing on collateral review. It's reviewable in the end. Take the transunion case out of the Supreme Court. They got all the way to the Supreme Court before deciding, oops, there's not a standing issue here. So I don't understand where in our jurisprudence appellate jurisdiction is required here. That's what I'm missing. I think there's a difference between the collateral order doctrine and the final, the administrative remand rule and whether the decision is final. The plaintiffs have pointed to no circumstance under which the standing, which has to be purpose behind the administrative remand rule is to deny appellants the right to challenge a particular legal issue that was finally decided by the district court. There just is no avenue if this case were to be reasserted. We don't need to reach that. I mean, I understand the delay, but we don't need to reach the standing and the standard review questions if ultimately you can get the relief that you get. And we all go our happy way. I mean, there is delay. I acknowledge that. But that's built into the system. I would refer the court to the Crow Tribe case on this issue because in that case there was a particular substantive issue that the interveners were allowed to appeal because the court on remand had demanded that the Fish and Wildlife Service review a very particular, apply a very particular methodology on remand. And the court basically said, you know, we're forcing the agency to undertake that analysis, and they won't have a chance to make a different decision. So that is, as a practical matter, final for purposes of appeal. But the difference there is that the defendant interveners could not get any relief on remand, whereas here you're in fact, in fact, you're already getting relief because you're doing what you want to do. But you can get relief. One, the agency may give you another, a clean EIS, and you just keep going. So you can get relief. Unlike in that case, they couldn't get relief, the defendant interveners, from the agency on remand. That's the problem. Well, they could have gotten the ultimate relief on remand if the agency had reaffirmed its decision. And I think that's what Your Honor is saying, is that if the agency reaffirms its decision below, Westmoreland will be, will never be injured. But that's, that was not the test applied by the Crow in the Crow tribe, because ultimately, that intervener may have seen a delisting decision again at the end of that process. But the point was the legal issue that the district court had made couldn't be reviewed unless it was reviewed by the appellate court in that case at that time. And so that, that's our argument, is that at this point, these two issues are final and do require this court's consideration. I'd like to turn to the standing issue, assuming Your Honors will reach it. And there's a few key facts that are important to that question. When you turn to standing, so let's assume for purposes of argument that we're with you on appellate jurisdiction, and then we get to the merits. Why would we reach standing when in fact, if you're right on the standard of review errors, like why, this whole thing's going to go back? So why, why standing becomes, I mean, there are all sorts of errors here, right? Including standard review as to the decision regarding standing. So it seems to me that if you're right on the standard of review with this thing, just, and we have appellate jurisdiction, we just send this thing back and we don't even, we don't need to waste our time with our addressed appellate, I mean, excuse me, standing. I would refer Your Honor to the U.S. Supreme Court's decision in Steele Company. That's a 1998 case where the court in that case said that after the court satisfies itself of its own jurisdiction, the next question is whether the court below had jurisdiction. And it's up to the court where the lower court did not have jurisdiction to reverse and to not review the merits. I agree it's a bit of a procedural morass. But in this case, you do have to decide the standing issue first. It's only if you decide standing in favor of the plaintiffs that you would move on to the standard of review question. So let me go to standing because I am puzzled over Mr. Gilbert's situation. This guy's been going there for, I don't know, 40 years or some large number. And if you put hunting aside, he's taking these scenic drives through here. And it's unclear to me why he wouldn't have a recreational and aesthetic interest under laid law that would give him standing. Might not be a lot, but you just need a little. Your Honor, I would submit it's a case-by-case test and it's based on that continuum of whether they've demonstrated that geographic nexus. In this case, you have to look precisely at the allegations that were made in the declaration. He does assert those four recent visits, which he doesn't dispute were potentially for self-inflicted purposes in order to establish standing. The reference to being in the West Fork 40 years ago references his professional interest as a consultant when he was in that area. But what's missing is that chunk of 40 years in the middle. And you can't assert an ongoing aesthetic interest in the West Fork if you've been absent from the West Fork for 40 years. Now for the first time on appeal, they do reference the 2019 deposition testimony that Mr. Gilbert made in a separate case that he many times has been in the West Fork in the last 20 years. But if you look very closely in the record at page 446, what he actually says is he's probably been in and around that country six to eight times in the past 20 years. And what I would refer the court to is if he has been, why didn't he include it in the declaration, which is where the specific facts need to be laid out to support their burden in this case to demonstrate standing? This is why he needs to be deposed. Exactly, Your Honor. And that was our initial position when we asked for discovery in this case, because there are controverted facts as to, one, whether he was there and of course his subjective intent in being there. And so that is our position. That's another reason why we would send standing back. He needs to be deposed. The record's not even, he needs to be deposed before a court can make a real decision as to whether he supplies standing. Unless, of course, the other gentleman supplies it, Johnson. If that's the result that this court reaches, that it needs to send this back for review, for discovery before the district court decides standing in the first instance, that would be an adequate result because that would afford us the relief of the full hearing on what the motivation was. Of course we can't do that if we don't really have appellate jurisdiction. You do have to satisfy yourself of your appellate jurisdiction before you reach that issue. Okay. The other reason why these plaintiffs lack standing, and I'd like to make this point before I hopefully reserve a little bit of time here, is that the driving by of activity on private lands is in the nature of a generalized grievance that does not support standing. And the D.C. Circuit recently held that in 2022 in the Environmental Defense Fund case. I would submit to the court that the geographic nexus test is sort of a continuum, and I would refer the court to the Ecological Rights Foundation case where Judge Berzon describes it as demonstrating a sufficient connection to the area to make credible that your future enjoyment will be harmed. And there's a number of factors you look at, including residential contiguity, the frequency of use, and the nature of the use. And here we are talking about drive-bys of activity on private land that are not from plaintiffs who live far away, once potentially per year, and that's just not sufficient to interest in a geographic connection. Counsel, earlier you said you wanted to reserve five minutes for rebuttal, and you just slightly passed. Thank you. I'll reserve the rest of my time for rebuttal. Thank you. Good morning, and may it please the court, Shiloh Hernandez for Appellee Conservation Groups. This case is about a 6,700-acre expansion called Area F of the Rosebud Strip Mine itself, a 30,000-acre coal strip mine that's going to dig up 70 million tons of coal and ship them to the coal strip and rosebud power plants to be burned, resulting in great amounts of air and water pollution, in addition to obliteration of the Area F area. Now, Westmoreland seeks to appeal, despite the district court remanding this to the administrative agency, without vacating the underlying Area F decision and without entering a final judgment in the district court. The Department of Interior, the agencies within DOI, Office of Surface Mining, have not sought to appeal. Only Westmoreland has. Sorry, go ahead. Counsel, let me ask you about their argument about appellate jurisdiction. They say, well, if we win and the agency gives us a clean EIS and we go forward, then you're going to file suit again. Or not only that, you're going to file suit. Is that correct? So putting aside questions of claim preclusion, would not if, I just want to understand procedurally how this is going to play out. Let's say they actually, and you don't have to, I'm not trying you to foreclose your options in terms of litigation tactics, but if they're successful in remand, the agency gives them what they want, then don't you have the ability then to go back to the district court and challenge that? That certainly is possible. That's certainly possible. And then if you're unsuccessful in appeal, then you can appeal that, correct? Depending on what happens. But if the district court issues a final decision, then we could appeal under 1228 U.S.C. 1291 or 1292, depending on the circumstances of the case. Right. And do you acknowledge that if you don't appeal, that you're going to be bound by claim preclusion? That is, if you decide not to appeal, that you're going to be bound by the results? These two groups here, which have associational standing, that you're going to be bound by, you couldn't bring a new lawsuit. Isn't that correct? Based upon the same claim? Or maybe that's the question. I'm sorry. If this is remanded to the district court. Yeah. So we got a remand. And let's say they're successful and then and they get what they want. And then you don't appeal. Or isn't that going to be binding on you for that new decision, unless you challenge it in the district court and up on appeal? The administrative decision? Yes. Yes. Well, I don't think that issue preclusion or claim preclusion would apply to an administrative decision on that. But there would be a statute of limitations. There'd be time limits for appealing. But I think that for issue or claim preclusion to apply, there has to be some final judgment from a court of appeal. But assuming we get it. So the district comes back and the district court says, OK, this is fine. And then the district court issues a final judgment blessing this new EIS. Isn't that going to be binding on you all? Yes. If there were a subsequent following remand, if there's a challenge by the plaintiff organizations that results in a final decision from the district court. Yeah. And we don't seek appeal. And that final judgment becomes final. Yeah. I'm not talking about new litigation. I'm talking about this case. This litigation would become. I think that there would be questions here about whether or not there was a final judgment on the merits, a final decision on the merits. The odd thing is there's no vacation here of the decision. There's a remand, correct? That's correct. OK. So they go back on a remand and. The EIS is modified or thrown out or redone, whatever may happen, and if the. Westmoreland is happy about that, then presumably you're still in the game to come back to the district court, right? Because it hasn't been vacated. That's correct. And I think that's the point that both your Honor Judge McEwen and Judge John Baker made following a remand. Everyone's options are open. Right. But if we go back and they say, well, same old, same old. We now. Enter findings and a revised or not revised EIS that's actually adverse to Westmoreland, then Westmoreland would have the option to come back, correct?  OK. And at that point, presumably they would also say, well, Mr. Gilbert here doesn't have any standing, right? If the plaintiffs were a part of the case, then Westmoreland could challenge standing. As your Honor noted, standing is always an issue, like in the TransUnion case. Right. At any point in time, they can raise standing through the whole proceeding. That's correct. And that's why they're not able to satisfy the third element of the collateral order doctrine as applied under ALSEA. They will get another chance. There is also a possibility of amending in the district court to add a different plaintiff, correct? Or is that not possible? Well, in theory, if another party sought to appeal a decision on remand, they could file through the vehicle of this case or they could file a separate case and they could consolidate them. But anyway, the whole ultimate decision is still always hanging out there for someone to challenge, whether it's an individual or an association or whomever, correct? Yes, that's that's exactly right. And that's that's the problem with Westmoreland's appeal right now, is that it's uncertain and speculative as to what will happen following the remand. Westmoreland may be entirely satisfied. But if they get the relief they want, right. And so the district court comes back and the district court enters final judgment. Then at that point, and that the rule has not been vacated, not the rule, but the EIS and the permit, then at that point, don't you have to appeal? That is, these two groups, these two groups can't bring a new lawsuit. You couldn't bring a new, maybe somebody else can or some other individual. But how can these two groups bring a new lawsuit? I mean, as opposed to just challenging it in the district court and then appealing it up here. It seems that the court's intention here, by not entering a final judgment here and not issuing a vacator, was that if the plaintiffs were dissatisfied, then they would amend their complaint in this case. I think that I'm not certain that's absolutely necessary. I'll note that in the Pitt River Tribe case, there the district court actually entered a final judgment and told the parties, if you want to seek, if you want to file a subsequent appeal of another administrative decision, you have to do that through the vehicle of another case. The parties raised that on appeal and the court said that doesn't affect the application of the administrative remand rule. Even if there is another case that's filed, this still isn't final. There's not an appeal here. So I don't think the question of whether or not a subsequent appeal of the remand decision occurs through the vehicle of this case, case 19-130 in the District of Montana, or a new case, I don't think that's dispositive to the question of whether or not the district court's decision remanding to DOI was final. Well, one of the, I think, policy arguments they make with respect to the status of this case or the appeal is that if there's no standing, then we really shouldn't be having this remand for a revision or review. So what's your response to that? I think the response is, as Judge Baker noted, that's the case in every administrative remand and it's just part of the policy established by the finality rule. There are some... It's not the case in every one because it's not always that the people are, parties are raising standing because it's pretty low threshold in some cases.  I mean, as you say, it's always an issue until you get to the end of the litigation, but it may not be a focus of the litigation like it is here. I'm not certain I follow the question, Honor, but maybe I can offer an analogy. All right. So considering the Alcea case, there the plaintiffs argued that the failure to list certain salmon species was, or the decision to do it was correct and that it should be affirmed on appeal. They said the district court got it wrong. We want to appeal to say that this listing decision was correct and that's the end of it. There won't be any remand there. And the court said, that's just how it goes. You'll have options to seek appeal after remand. So that's another case. It wasn't standing, but it was a situation where the remand itself wouldn't have been necessary had the appeal gone forward. And the court said that strong policy interest in avoiding piecemeal appeals and assuring, protecting judicial resources mandates that this case proceed through the administrative remand process before seeking subsequent appellate review. I think that it's no different for standing. In fact, if anything, the basis for standing is stronger, for not allowing an interlocutory appeal for standing is stronger because, as the court noted in the Casseray decision, the court's already said that under the collateral order doctrine, standing isn't an exception that will allow interlocutory appeal. And I think that that makes eminent sense in light of the goals of the finality rule. One, is to assure, protect judicial resources. And two, prevent parties from losing opportunities to bring claims. And here, they consider two things, Your Honor. One, if it's remanded, they'll always have an opportunity to challenge standing. And two, if the court were to carve out a new exception to allow standing, interlocutory appeals for standing in this circumstance, then every single administrative remand will be subject to an interlocutory appeal, which would cause the court's already busy docket to balloon. I'm sorry, go ahead, Your Honor. So what they're saying, though, and this is what is somewhat troubling to me, is that they're saying, look, if we don't decide this now, this is going to be the equivalent of Groundhog Day. It's going to happen over and over and over again, right? So what's going to happen is that you're going to, A, win, and you bring a new lawsuit. And then the district court agrees, and they challenge standing, and the district court disagrees, and then remands it back. And it's never, the standing issue is never resolved. They could be tied up in litigation indefinitely, just seriatim lawsuits. I think there is a suggestion that that's what would result from this, but I think that's wrong for at least three reasons. They can seek appeal. One, as Your Honor. No, they can't. No, if on remand, let's imagine we're trying to avoid this hamster wheel. Goes back, the conservation groups sue again on the subsequent EIS. And there- Sue again, but be very clear. You say sue again. Do you mean amend your complaint in this suit or challenge it in the district, the same case? Or are you talking about instituting a new lawsuit? That's critical. I think it doesn't matter, but for the sake of clarity, let's assume that they amend their complaint in this lawsuit to bring a subsequent challenge. Who's they, you? The conservation groups, yes. Okay. That's right. I'm sorry. And they win. There's a standing decision that the district court, again, holds that the conservation groups have standing. There, if Westmoreland suffers any actual harm, if the court says you may not mine in Area F, then they can appeal under 28 U.S.C. 1292A1 for issuance of an injunction. Alternatively, if the district court says this EIS isn't up to snuff again, I'm going to remand it. And DOI says, wait a second. We think that's wrong, and we want to seek an appeal. Then, under the ALSEA standard, an appeal would be available, and Westmoreland could seek to challenge standing in that instance. Alternatively, Westmoreland could seek to certify an appeal under 28 U.S.C. 1292A2 or B. So what I'm saying, Your Honor, is that the idea that this is going to lead to perpetual groundhogs day is hyperbole. Because if there's any harm that actually happens to Westmoreland, if they're enjoined for mining, then there's an avenue to appeal. So I think that that argument's overblown. If I may, I want to add one more point on appellate jurisdiction and then move to the question of standing. The other point is, my friend on the other side mentioned the Crow Tribe case as the case that is the basis for standing in this case. And I think that's mistaken for three reasons. One is that, unlike here, that case didn't involve an effort to seek an interlocutory appeal with respect to standing. So that's entirely new. It's not on point. Two, in Crow River Tribe, the Department of Interior also sought to appeal. And that changes the posture of the case under ALSEA, as this Court noted in the Pit River Tribe case. If you have intervenors and the agency, an appeal is available. And third, with respect to what was requested and what the Court allowed appeal for the intervenors in the Crow Tribe case, is there was a substantive decision about how the Department of Interior would conduct certain population modeling. And they didn't have an opportunity to change that in the administrative appeal process. So the Court said that's a separable issue that can be appealed now. And that's not the case here. Here, the remand's total. It's completely tabula rasa. The agency can address everything on remand. So I think the Pit River Tribe case, sorry, the Crow Tribe case may be their best authority, but it doesn't actually support their position. If I can turn to standing, I think should the Court address standing, the basis for standing here is directly in line with this Court's long-established jurisprudence. I would point the Court first to the Ecological Rights Foundation versus Pacific Lumber case. There are two Ecological Rights Foundation cases in this briefing. I'll call one Pacific Lumber and the second one PG&E for Pacific Gas and Electric. Here, you have members with a long-standing connection to the area affected by the operation. They've documented their visits to the location. They have the intention of returning there. That's more than sufficient to establish a geographical nexus for standing under this Court's jurisprudence. It's directly in line with the Laid Law case, Ecological Rights Foundation case. Now, Westmoreland raises a number of arguments challenging this. The first is that they say that there's this gap in time that Mr. Gilbert and Mr. Johnson allegedly have. And that's just not accurate in light of the record. I'll direct the Court to Mr. Gilbert's declaration here at ER 295 and 296, where he says he's been visiting the Coal Strip area for 40 years on an annual basis. And we know that this started with him working there, but he's continued to the present and his most recent trips are documented in the record. Right, but he doesn't say he's been through the West Fork, Arnold's Creek area, which is part – I mean, this is a big area, Coal Strip, right? And you've got the – and then the area F is just a subset of the West Fork. So he doesn't say that he's – in the last 40 years, he's been going to the West Fork. And to say nothing of area F. I think that – to correct the – I'll quarrel briefly with the premise of the idea that this is a big area. Coal Strip, Montana, is a very small town. It's a town of 1,000 people the size of a couple city blocks here in Seattle. It's surrounded by this vast strip mine operation that has areas A through F. And all the coal from every one of these areas is funneled in trucks and a conveyor belt back to the town where it's burned in the Coal Strip power plant. Now, what Westmoreland is trying to do is say, we want to only look at the permit area of area F, which is separated by the town – from the town by about a half-dozen miles of strip mining. What they're doing there, though, is they're trying to confuse – well, they're confusing the idea between the permit area and the affected area. And this is critical and fatal to their case. The question for standing, as this court explained in the PG&E case, is the affected area. Whether or not the plaintiff actually goes to the source of the pollution is, as the court said, quote, of no moment. The question is whether they go to the affected area. And here, the effects of area F will stretch far beyond the 6,500 acres that will be strip mined. Namely, the EIS found that the cumulative effects of area F mining would lead to major impacts to surface and groundwater throughout the Armles Creek Basin, which includes both east and west and embraces the entire Coal Strip area. That's on ER 260. And here, there's no question. Mr. Gilbert's declaration says he's been going to the Coal Strip area in the Armles Creek Basin annually for 40 years. The second thing that the record says is that all the coal from area F, 70 million tons, is going to be burned at the Coal Strip power plant. It's going to generate tens of thousands of tons of harmful pollution every year and cause pollution impacts that will be visible for an area within a 300-kilometer radius of Coal Strip. So the impacts from area F are going to be very far-reaching and will embrace all of the area of Coal Strip. And that's all the farther the court needs to go because Westmoreland concedes in their reply brief at page 17 that Mr. Gilbert and Mr. Johnston have an established connection to area F. I mean, sorry, to the Coal Strip area. And I think that's the end of the story because that's what the court found in ecological rights. It's the affected area, and that's what the court said in Laidlaw as well, the Supreme Court. They said, if you are only visiting an area 40 miles downstream from a polluter and you have reasonable concerns that that pollution will affect your enjoyment of that downstream area, that's sufficient for standing. In TransUnion as well, the court said, we're talking about the downstream consequences in thinking about standing. Here, the downstream consequences of mining area F will be dramatic. And I'll note in ER 109, Westmoreland itself concedes that pollution from the power plant will be directly tied, that's their language, directly tied to area F expansion. So their effort to narrow the analysis just to the area F permit area is not supported by the law and is, in fact, refuted by this court's decision in ecological rights foundation versus PG&E and the Laidlaw decision. If I can very briefly note that their basis for arguing against the more recent visits to area F have no validity in light of the Supreme Court's decision in Cruz and this court's more recent decision just last year in the Langer versus Kaiser case, which I didn't cite in the brief but have found subsequently, the citation is 58. Don't tell us the citation submitted 28J letter. Okay, but there, both of the courts say the same thing, which is that questions... We're not going to look it up right now. The questions of the motives of a party in going to an area exposing themselves to certain harm is irrelevant to the standing inquiry. We don't have a fourth mens rea element that's relevant to standing. That's just not part of the analysis. And here, Westmoreland's efforts to create some kind of question about the validity of these trips to area F with the interest of protecting the area, it doesn't change the standing analysis at all under Cruz and the Langer decision. Counsel, that red light flashing means that you're over your time. Your Honor, we respectfully request that the court either dismiss Westmoreland's appeal for lack of jurisdiction or affirm. Thank you all for your time. Thank you. We have some rebuttal argument. I have a few minutes left, and I'd like to start with Danny, and then I want to address the finality issue one last time. First, addressing the issues that Mr. Hernandez just raised. The problem with plaintiff's allegation that pollution throughout the coal strip area is sufficient for standing is that these particular declarants don't claim a personal injury related to those environmental effects. So if you look quite closely at their declarations, they talk about their concerns about environmental effects, their knowledge of environmental effects, and the U.S. Supreme Court has held repeatedly that claims of impacts to the environment just aren't enough. They have to be impacts to the particular person that are a personal stake, and so that's what's missing in terms of their preexisting interest in the greater region. Moreover, their visits to the coal strip area, as Your Honor noted, are not in the West Fork, and so the Supreme Court's decision in Lujan provides that it has to be use of the affected area, not an area roughly in the vicinity, not some area within, you know, close proximity. It has to be use of the particular area. What's your response to this argument that, well, they're visiting, and the coal plant in the area is burning coal coming from this Area F expansion, and therefore they're having to ingest particulates from the burning of that coal. And so you don't have to be, that's a quite distinct injury from the aesthetic injury of visiting. Yes, a health interest is obviously a totally separate interest. Here, the only person who claims the potential that he's concerned about it is Mr. Johnson, if you look at his declaration, but he goes to the area once per year. This isn't like Hall v. Norton in this circuit, where the appellant, the declarant, lived in the Las Vegas Valley, where the pollution was happening and had an asthma condition. And so that is the type of situation that would be sufficient. That's just not the case here. We have speculative concern, not an actual injury to these plaintiffs. What about the declaration that talks about aesthetic and recreational appreciation? Isn't that sufficient for standing? It absolutely is if you have that recreational and aesthetic interest in the West Fork. That's where they're seeing the mining occur, and so that's where their interest has to be. The other problem with claiming an aesthetic interest, for instance, in perhaps they don't want to see the power plant in operation, is they lack redressability. The power plant and the mine have been in existence for over 55 years, and it's not as if turning off Area F means the power plant goes away. So, you know, redressability has to be likely and not merely speculative, and it would be entirely speculative to say that the power plant is going to close as a result of foreclosing mining in just one area of the mine. I'd like to turn to finality with just my last minute here, because it's important to note that this court, the district court below, will not retain jurisdiction of this case. Once the record of decision is issued by the Office of Surface Mining, per the law, that case is gone. They will have met the requirement for remand, and these plaintiffs would need to bring a new case. Doesn't the district court enter a judgment? The district court would enter a final judgment at that point. After the agency comes back and you get what you want, there will be a final judgment entered in the district court, won't there? And also, this is a little bit different than some cases, because there's no vacating of the current status. Correct, but there is a deferred vacature with a condition. So on April 31st of this year, if the record of decision isn't complete, the mine plan will be vacated. So for purposes of the remand process, the court has retained jurisdiction. But once that condition is met and a new rod is issued, the case goes away. I would refer the court to 350 Montana, where these similar plaintiffs have brought, and this isn't referred to in our briefs, but it's a Ninth Circuit case. You can also. Yes. Why don't both of you, instead of discussing the case here, submit 28J letters on that point? Okay. It's a very brief reference. Well, not without referencing the case. The point is that plaintiffs can and do repeat litigation, and they add new plaintiffs in order to avoid privity of party. If you get what you want here, don't they have to then – the district court enters a judgment, and don't they have to appeal that back to the Ninth Circuit? No, because we have a brand-new agency decision that the OSM is going to make that requires – But they challenge that? If you get what you want in the district court, and then – if you meet before the agency, and it goes – and the district – can't they then challenge that in the district court, this case? They conceivably could, but the way that these cases generally work is they bring a new claim with new – They're a new ROD. Correct, and they may have new claims because there will be an entirely new analysis that's being done. Okay, so – I think we have your point in mind vis-à-vis the appeal question. Thank you. Okay. Thank you, Your Honors. I appreciate your time. We ask that you reverse and remand for the district court to dismiss the case for lack of standing. Thank you. Thank you very much. I think that concludes the Montana environmental information case v. Westmoreland argument. So that case shall now be submitted.
judges: McKEOWN, GOULD, Baker